CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 17, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **PHILLIP MICHAEL GILES,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:23CV00519 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Respondent. | ) | |
| | ) | |

*Phillip Michael Giles, Pro Se Petitioner; Lindsay M. Brooker, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Petitioner, Phillip Michael, a Virginia inmate proceeding pro se, in his present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, contends that his confinement pursuant to a 2019 sentencing by the Circuit Court of Pittsylvania County is unconstitutional because the judgment against him is void ab initio and he received ineffective assistance of counsel. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted.

## I. BACKGROUND.

The Court of Appeals of Virginia, in its opinion denying Giles' direct appeal on February 6, 2020, stated the relevant evidence as follows:

> On March 30, 2017, Demetrius Brown's father confiscated marijuana from Brown. On April 5, 2017, Brown was at home with his parents in Pittsylvania County and asked his father for the marijuana.

Brown's father refused, and a short time later, he saw Brown texting on his phone. As Brown walked out the front door, he stated, "[M]arijuana [is] easy to get." Brown's father testified that Brown was not carrying anything when he left the house. Using his home surveillance cameras, Brown's father watched Brown walking up the road. Moments later, Brown's father heard what he believed was a gunshot. Fearing that Brown had been shot, Brown's father drove up the road and found Brown dead on the ground. Brown died from a single gunshot wound to his face.

Pittsylvania County Sheriff's Office Captain George Coleman responded to the scene. Brown "had blood coming out of his mouth, nose and ears" and held a cell phone in his right hand. Brown also had a bag of marijuana in his left hand. Coleman saw a shell casing near Brown's left leg. The police viewed the surveillance video from the Brown residence. The video shows a white Cadillac drive past the Browns' house and then stop in the road a short distance away. Brown left his house and ran to meet the Cadillac in front of Wendy Thomas' house.

Thomas testified that she went outside shortly after 9:00 p.m. to let her dog out. She heard a car drive down the road and then turn around and park. She testified that she is visually impaired and could only see a bit of light. Thomas heard Brown say, "[M]an, please don't do it," and then she heard a gunshot followed by a thump. Thomas ducked down and returned to her house. After the gunshot, she heard the car drive away. Thomas testified that she had known Brown since he was a young child and spoke with him often. She recognized his voice and noted that Brown sounded "scared, he was like begging."

By searching Brown's phone, the police identified [Giles] as a suspect. The police tracked [Giles'] phone and determined that he was driving on I-95 in South Carolina. During the early morning hours on April 6, 2017, South Carolina Deputy Sheriff Chad McDowell saw [Giles'] car traveling southbound on I-95. When McDowell activated his lights, [Giles] increased his speed and exited the highway. After a highspeed chase, [Giles] crashed his car and fled on foot. Other officers apprehended [Giles] a short time later.

> [Giles] testified that he had arranged to sell Brown marijuana before leaving for South Carolina. He stated that Brown met him at his car without any money. [Giles] claimed that Brown said, "I robbed you before and I'll do it again." He also claimed that he was the person who said, "[P]lease don't do this." [Giles] testified that Brown reached toward his pocket, and fearing that Brown was producing a gun, [Giles] grabbed his gun and shot out the car window without aiming.

Corrected Br. Supp. Mot. Dismiss Ex. 4, at 114–15, ECF No. 20-4.

On this evidence, a jury convicted Giles of first-degree murder, CR17000306-00. *Id*. at Ex. 2, ECF No. 20-2. Prior to sentencing, Giles filed a motion to set aside the jury's verdict. *Id.* at Ex. 3, ECF No. 20-3. The trial judge denied Giles' motion and sentenced him to seventy years in prison with thirty years and five months suspended, leaving an active sentence of thirty-nine years and seven months. *Id*. at Ex. 1, ECF No. 20-1.

Giles, through counsel, appealed to the Court of Appeals of Virginia, Record No. 0968-19-3. In a part of the appeal, Giles contended that the trial court had violated his statutory right to a speedy trial under Va. Code Ann. § 19.2-243, depriving him of due process. Giles conceded that he failed to make this argument to the trial court, but he argued that the court of appeals should apply the "ends of justice" exception. Va. Sup. Ct. R. 5A:18. The court of appeals denied the appeal petition and granted counsel's motion to withdraw. The court also rejected Giles' claim seeking to invoke the ends of justice exception, finding the relevant facts as follows:

> The juvenile and domestic relations district court determined that probable cause existed at a preliminary hearing on May 25, 2017. [Giles'] trial was scheduled for September 20, 2017, a date within the speedy trial period. On September 8, 2017, [Giles] requested a continuance. On November 14, 2017, [Giles] moved for substitution of counsel and for another continuance. The trial court heard argument on the motion, and the Commonwealth objected, arguing that an essential witness would be unavailable beginning in December 2017 due to his military obligations. [Giles] specifically agreed to waive his speedy trial rights to obtain the continuance so that his new counsel could prepare for trial. [Giles] acknowledged that that he understood that he "may be detained for twelve to fifteen months until this trial is heard." The continuance order reflects that "the [c]ourt granted [the] motion for continuance with *defendant waiving speedy trial*."
>
> [Giles] appears to argue, without support, that his state and federal constitutional rights to due process were violated because his statutory right to a speedy trial was violated. As noted above, [Giles] specifically waived his statutory speedy trial rights. Accordingly, we find no due process violation. Because [Giles] expressly waived his speedy trial rights, we find no reason to invoke the "ends of justice" exception, and Rule 5A:18 bars our consideration of this issue.

Corrected Br. Ex. 4, at 118, ECF No. 20-4.[1] Through new counsel, Giles pursued an appeal to the Supreme Court of Virginia, but the appeal was refused by orders dated April 12, 2021, and July 2, 2021. *Id*. at Ex. 5, ECF No. 20-5.

On June 24, 2022, Giles signed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia. *Id*. at Ex. 6, ECF No. 20-6. Liberally construed, this petition raised the following claims:

[1] For consistency, citations to the record will refer to the page numbers assigned to the documents by the court's electronic filing system.

1. The final judgment order under which Giles is confined was obtained in violation of due process and is null and void ab initio because the jury did not fix the degree of Giles' murder offense.

2. The final judgment order was obtained in violation of his rights under the Sixth and Fourteenth Amendments because counsel provided ineffective assistance by:

    a. Failing to move to dismiss the murder indictment before trial, pursuant to Virginia Supreme Court Rule 3A:9(b)(1), on the ground that Giles would be deprived of a speedy trial, in violation of Virginia Code Ann. § 19.2-243.

    b. Failing to object to the trial court's discharge of the jury, in violation of Virginia Code Ann. § 19.2-295, after the jury's verdict found Giles guilty of murder, but failed to decide whether he was guilty of murder in the first or second degree, a finding requiring by Virginia Code Ann. § 19.2-288.

    c. Failing to make a timely objection to the trial court's sentencing of Giles without the intervention of the jury, allegedly violating Virginia Code Ann. § 16.1-272, since Giles was not a juvenile when he was indicted.

*Id.* at 7, 19-20. The Supreme Court of Virginia denied Giles' habeas petition as well as his Petition for a Rehearing. *Id*. at Ex. 7, ECF No. 20-7; *Id*. at Ex. 8, ECF No. 20-8.

Giles timely filed the present federal habeas petition under 28 U.S.C. § 2254. Liberally construed, it alleges the following grounds for relief:

1. The final judgment order under which Giles is confined was obtained in violation of due process and is null and void ab initio because it did not fix the degree of Giles' murder offense; therefore, the circuit court had no power to render it.

2. The final judgment order was obtained in violation of his rights under the Sixth and Fourteenth Amendments because counsel provided ineffective assistance by:

    a. Failing to move to dismiss the murder indictment before trial, pursuant to Rule 3A:9(b)(1), on the ground that Giles would be deprived of a speedy trial, in violation of Virginia Code Ann. § 19.2-243.

    b. Failing to object to the trial court's discharge of the jury, in violation of Virginia Code Ann. § 19.2-295, after the jury's verdict found Giles guilty of murder, but failed to fix the degree of his murder offense.

    c. Failing to make a timely objection to the trial court's sentencing of Giles without the intervention of the jury, and failing to challenge the court's sentencing procedure as applicable only when a juvenile has been indicted.

Am. Pet. Addendum 4, 8–9, ECF No. 2-1. The respondent has filed a Motion to Dismiss, and Giles has responded, making the matter ripe for disposition. I have also reviewed the state court records.

## II. Discussion.

### A.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When the respondent files a motion to dismiss, however, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply" to the extent they are not inconsistent with rules

governing habeas cases. *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). Thus, a motion to dismiss a habeas petition challenges whether the petition's factual allegations state a claim upon which relief can be granted under 28 U.S.C. § 2254. *Id.*; *Walker v. True*, 399 F.3d 315, 320 (4th Cir. 2005).

To survive a motion to dismiss, the petition and any attached exhibits, "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] A claim is facially plausible when the well-pled facts "allow[ ] the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged" under the governing law. *Id.* at 678.

Absent a valid excuse, a state prisoner must exhaust his remedies in the state courts before seeking habeas relief in federal court. 28 U.S.C. § 2254(b)(1)(A). Failure to properly exhaust state court remedies can trigger procedural default that also bars federal review of the claim in some circumstances. The parties agree that Giles exhausted his state court remedies because each of his federal habeas claims was substantially raised in his habeas petition to the Supreme Court of Virginia. Corrected Br. Ex. 6, ECF No. 20-6; *Id*. at Ex. 7, ECF No. 20-7.

---

[2] I have omitted internal quotation marks, alterations, or citations here and throughout this Opinion, unless otherwise noted.

A federal court reviewing habeas claims under § 2254 that were adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In the context of federal habeas review, the question is not whether a federal court would reach the same decision as the state court or even whether the federal court believes the state court's decision is correct. A petitioner must convince the federal habeas court that the state court's decision was unreasonable, "a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

"The petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Furthermore, a federal habeas court "must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). To find a state court decision was based on an unreasonable determination of the facts considering the evidence presented in the state court proceeding, a federal habeas court must "conclude not only that the state court's determination was wrong" and unreasonable, but also that the finding of unreasonableness "is not debatable among

jurists of reason." *Crockett v. Clarke*, 35 F.4th 231, 241 (4th Cir.), *cert. denied*, 143 S. Ct. 330 (2022).

B.

In Claim 1 of the federal habeas petition, Giles contends that the circuit court had no authority to sentence him because the jury did not make an express finding that he was guilty of first-degree murder. Specifically, he asserts that he was charged in a so-called short-form Indictment, and that the jury never determined whether he was guilty of murder in the first or second degree. Thus, Giles claims that the state court judgment against him was void ab initio. He is mistaken.

Giles presented substantially the same habeas claim to the Supreme Court of Virginia. That court rejected the claim, finding that "[t]he record, including the verdict form signed by the foreperson and read in open court, demonstrates the jury found [Giles] guilty of first-degree murder." Corrected Br. Ex. 7, at 1, ECF No. 20-7. I must defer to the state court's finding on this factual issue, and that finding is supported by the record. The verdict form considered by the jury contained four sections with these headings: "First Degree Murder," "Second Degree Murder," "Voluntary Manslaughter," and "Not Guilty." *Id*. at Ex. 9, ECF No. 20-9. The form was prepared for the jury foreperson to sign and print his or her name and fill in the date under the heading on the form that represented the jury's verdict among the four listed options. The verdict form in the record of Giles' case includes the jury

foreperson's signature under the section heading for "First Degree Murder," which also included this statement: "We, the jury, on the issue joined, find the defendant, Phillip Michael Giles, guilty of unlawfully and feloniously killing and murdering Demetrius Brown, against the peace and dignity of the Commonwealth as charged in the indictment." *Id.* The Indictment, while reciting this same short form charging language approved by Va. Code Ann. § 19.2-221, also included the following heading on its face: "INDICTMENT FOR FIRST DEGREE MURDER." *Id*. at Ex. 10, ECF No. 20-10.

Based on the heading of the Indictment and the placement of the foreperson's signature on the verdict form, the Supreme Court of Virginia reasonably held that Giles was indicted, and then convicted by the jury, for the first-degree murder of Demetrius Brown. This court must presume these factual findings by the state court on state law to be correct, and Giles has not offered clear and convincing evidence to contradict these findings. I conclude that the state habeas court's ruling on this claim was not contrary to nor an unreasonable application of clearly established federal law as stated by the United States Supreme Court nor was it based on an unreasonable determination of the facts. I will grant the Motion to Dismiss as to Claim 1.

C.

When reviewing claims that counsel provided ineffective assistance at trial or on appeal, a federal court must apply a highly deferential standard. A petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of an exhausted § 2254 habeas claim, review of counsel's performance is "doubly deferential," because the *Strickland* standard overlaps with the deferential standard under 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. at 190.

To establish the element of deficient performance, a petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategic decisions. *Id.* at 689. Under § 2254(d), the performance question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" of objective reasonableness. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To establish prejudice, a petitioner must show that but for counsel's challenged conduct, there is a "reasonable probability that . . . the result of the proceeding would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because deficient performance and prejudice are "separate and distinct elements" of an ineffective assistance claim, if the petitioner fails to establish one of these elements, the court may dismiss the claim without addressing the other element. *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994); *Strickland*, 466 U.S. at 697. I will apply these deferential standards in reviewing Giles ineffective assistance of counsel claims, all of which were rejected by the state habeas court.

D.

In Claim 2(a), Giles claims that counsel was ineffective for failing to move to dismiss the Indictment, arguing that no circuit court order set his case for trial within the speedy trial period established in Va. Code Ann. § 19.2-243.[3] In addressing this claim in state habeas proceedings, the Supreme Court of Virginia expressly ruled

[3] The statute requires the Commonwealth to bring a defendant who has been continuously held in custody on a felony to trial within five months after the date when the general district court found probable cause, such as in a preliminary hearing. The statute also sets out several occurrences that will toll the speedy trial period calculation, such as a motion by the defendant or his counsel seeking a continuance. Va. Code Ann. § 19.2-243(4). The speedy trial protections granted under section 19.2-243 may be waived by the defendant. *Heath v. Commonwealth*, 541 S.E.2d 906, 908 (Va. 2001).

that facts in the record showed that Giles was not denied a speedy trial under section 19.2-243. Specifically, the court found as follows:

> The record, including the transcript of [Giles's] November 14, 2017 motions hearing and the circuit court's manuscript record, demonstrates [Giles], who was seventeen at the time of the offense, was arrested and charged with murder, which was certified to the grand jury by the Juvenile and Domestic Relations Court of Pittsylvania County on May 25, 2017. [Giles] remained in custody throughout the pendency of his case.
>
> The grand jury indicted [Giles] on June 19, 2017, and the case was set, with the agreement of the parties working with the trial judge's assistant, for trial without a jury on September 20, 2017. On September 8, 2017, [Giles], by counsel, filed a motion for a continuance and a request for a jury trial. The court granted the motion and the parties agreed to a trial date of November 30, 2017. On November 14, 2017, [Giles], by counsel, filed motions for substitution of counsel and a continuance. The Commonwealth objected to the motion for a continuance, arguing a necessary witness was scheduled to be deployed on December 15, 2017, and would be unavailable for between eleven and eighteen months. [Giles], after consulting with counsel, agreed to waive speedy trial, acknowledging he understood he could be held in custody awaiting trial for twelve to fifteen months. The court subsequently granted both motions, noting [Giles'] waiver and continuing the case to June 18, 2018, to be set for trial. Thereafter, the case was set for a three-day jury trial beginning January 14, 2019.
>
> Thus, contrary to [Giles'] claims, his trial was initially set for September 20, 2017, within the statutory limits set forth in Code § 19.2-243. *See Young v. Commonwealth*, 297 Va. 443, 446 (2019) (applying Code § 19.2-243 in the context of a juvenile and domestic relations court probable cause hearing). Moreover, the two continuances were granted at [Giles'] request, and [Giles] affirmatively waived his speedy trial rights until the Commonwealth's witness became available again, which he acknowledged could be more than a year later. Accordingly, counsel could reasonably have determined any motion to dismiss the murder charge under Code § 19.2-243 would have been meritless. *See Correll v. Commonwealth*, 232 Va. 454, 470 (1987) (counsel is not

> ineffective for failing to make a futile argument). Thus, [Giles] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Corrected Br. Ex. 7, at 1–2, ECF No. 20-7.

As the state habeas court found, I agree that Claim 2(a) fails on both facets of the *Strickland* standard. First, the state courts found from the complete record that Giles' case began in the juvenile and domestic relations court where the preliminary hearing occurred on May 25, 2017, with the case on the subsequent indictment set for trial without a jury on September 20, 2017. It is undisputed that this first trial date was within the statutory time limit under section 19.2-243. That date, scheduled by the judge's assistant, had to be changed when Giles, through counsel, moved for a jury trial instead.

I am required by law to presume the state court's factual findings on court scheduling matters to be correct, pursuant to 28 U.S.C. § 2254(e)(1), and Giles offers no clear and convincing evidence to the contrary. I cannot discount these state court findings merely based on Giles' complaint that he does not find a written order for each of these events in the circuit court's record. Moreover, the findings about initial trial dates and continuances are supported by the record, particularly the November 14, 2017, motions hearing transcript in which the parties agree when they discuss the procedural history of the case in detail. At the time of that hearing, Giles was scheduled for trial on November 30, 2017, but he waived his right to a speedy trial,

*Id*. at Ex. 14, ECF No. 20-14, and declared his understanding that doing so might delay his case for a year or more because of a Commonwealth witness being deployed for military service. *Id*. at Ex. 13, ECF No. 20-13. Counsel has also filed an affidavit stating that Giles consented to any continuances of trial dates before the court granted them. *Id*. at Ex. 15, ECF No. 20-15.

On the facts and state court rulings, I cannot find that defense counsel's failure to move to dismiss the indictment under the state speedy trial statute was deficient professional performance. Counsel is not ineffective for failing to make a futile motion or argument. *Polk Cnty. v. Dodson*, 454 U.S. 312, 323 (1981) ("It is the obligation of any lawyer . . . not to clog the courts with frivolous motions."). Nor can I find that but for counsel's alleged error, the result at trial would have been different. Therefore, Giles has not established that the state court's disposition of this claim was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact. I will grant the Motion to Dismiss as to Claim 2(a).

In Claim 2(b), Giles asserts that counsel was ineffective for failing to object to discharge of the jury before jurors determined whether Giles was guilty of murder in the first or second degree. When the deputy clerk read the jury's verdict form on January 16, 2019, that recital did not include any mention that the foreperson had signed under the heading for first-degree murder or second-degree murder. It did,

however, state that the jury had found Giles guilty as charged in the Indictment, which was entitled first degree murder. Corrected Br. Ex. 10, ECF No. 20-10. The transcript also reflects that the trial judge did not declare from the bench a verdict of guilty of first-degree murder. No party asked to have the jury polled. Giles contends that if counsel had objected, the court would have required the jury to continue deliberations to fix the degree of his murder offense.

In addressing this claim, the state habeas court found:

> The record, including the verdict form signed by the foreperson and read in open court, demonstrates the jury found [Giles] guilty of first-degree murder. Accordingly, counsel could reasonably have determined that there was no reason to object to the trial court discharging the jury.

*Id*. at Ex. 7, at 3, ECF No. 20-7. I am required pursuant to 28 U.S.C. § 2254(e)(1) to presume correct the state court's factual findings — from the record as a whole — that the jury found Giles guilty of first-degree murder. Giles offers no clear and convincing evidence to the contrary. Moreover, the evidence fully supports the state court's finding regarding the jury's first-degree murder determination, based on the heading of the indictment itself and the verdict form heading of first-degree murder, under which the foreperson signed to indicate the verdict option that the jurors had selected in deliberations.

Furthermore, the legal sufficiency of the state court's finding of first-degree murder, based on the record, is a matter of state law. "[I]t is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Given the state courts' rulings based on the record, I cannot find that counsel was unreasonable in failing to object to the form of the jury's verdict or to ask for further deliberations. I also cannot find any reasonable probability that such an objection would have changed the result at trial, as required to demonstrate grounds for relief under *Strickland*. Thus, Giles has not demonstrated that the state court's determination of this claim was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact. I will grant the Motion to Dismiss as to Claim 2(b).

In Claim 2(c), Giles contends that counsel was ineffective in failing to object when, at the close of the jury trial, the circuit court judge stated her intent to sentence Giles without intervention by the jury. Am. Pet. Addendum 9, ECF No. 2-1. Giles claims that under Va. Code Ann. § 16.1-272, this sentencing procedure is applicable only in cases in which a juvenile was indicted, and should not have been applied in his case because he was eighteen when the grand jury returned its indictment against him.[4]

The state habeas court, in addressing this claim, ruled as follows:

[4] Inexplicably, the attorneys for the parties stated at times during closing arguments at sentencing that Giles committed the crime when he was sixteen. In fact, on April 5, 2017, when the shooting occurred, Giles (born in May 1999) was about one month shy of his eighteenth birthday.

> [Giles] contends he was sentenced by the trial court pursuant to Code § 16.1-272(A), which provides that "[i]n any case in which a juvenile is indicted," and tried as an adult, "the court shall fix the sentence without the intervention of a jury." [Giles] contends Code § 16.1-272(A) was inapplicable because, although he was a juvenile at the time of the murder, he was eighteen, and therefore an adult, when he was indicted.
>
> The Court holds this portion of claim (2) fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. [Giles] has failed to articulate any grounds to suggest a jury would have been reasonably likely to sentence [him] more leniently than the trial court. Thus, [Giles] has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Corrected Br. Ex. 7, at 3, ECF No. 20-7.

I agree that this claim fails under the prejudice prong of *Strickland.* Giles has presented no evidence or argument showing a reasonable probability that being sentenced by the jury would have resulted in a different or more favorable outcome at sentencing. Certainly, Giles has not presented any reason to believe that the trial jurors who had just convicted him of first-degree murder would have sentenced him more leniently than the judge did. *Strickland*, 466 U.S. at 687, 694 (finding that to demonstrate prejudice a petitioner must show that he was deprived of a "fair trial, a trial whose result is reliable" and that "but for counsel's unprofessional errors, the *result* of the proceeding would have been different") (emphasis added).[5] While the

[5] Va. Code Ann. § 16.1-272(A), states, "In any case in which a juvenile is indicted," the court rather than the jury will impose sentence. Giles believes that because he had turned eighteen before the grand jury indicted him, the requirement in section 16.1-272(A)

judge imposed a seventy-year sentence, she could and did suspend part of the sentence to bring it within the state sentencing guidelines for the offense. On this record, I cannot find that the state court's rejection of this claim under *Strickland* was unreasonable or that it was based on an unreasonable determination of facts. I will grant the Motion to Dismiss as to Claim 2(c).

## III. CONCLUSION.

For the stated reasons, I will grant the respondent's Motion to Dismiss. I decline to issue a certificate of appealability because Giles has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

A separate Final Order will be entered herewith.

DATED: September 17, 2024

/s/ JAMES P. JONES
Senior United States District Judge

---

for the court to sentence juvenile offenders did not apply to him. Under relevant statutes and caselaw, however, I conclude that Giles' counsel could reasonably have believed that the term juvenile in section 16.1-272(A) referred to the defendant's juvenile status at the time of the offense and to the fact that he had not been tried and convicted as an adult on any prior criminal charge. Va. Code Ann. § 16.1-271 (providing that juvenile offender once convicted as adult must have all other pending or future charges adjudicated under rights provided to adult defendants); *Saunders v. Commonwealth*, 706 S.E.2d 350, 353 (Va. 2011) (holding that Va. Code Ann. § 16.2-271 applied to a young defendant who had been previously convicted and sentenced as an adult on an unrelated charge and thus was properly tried and sentenced by the jury instead of the judge on other offenses committed while he was under eighteen). Therefore, I cannot find that counsel's failure to object to the court's intention to sentence Giles represented professionally deficient counsel, or that but for counsel's actions, there is a reasonable probability that the result at sentencing would have been different.